**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| TALEISHA LEWIS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:19-cv-00630-ADA-JCM |
| TITLEMAX OF TEXAS, INC., IVY FUNDING, LLC, PLATE RECON, LLC dba PLATE LOCATE, and FCAR, LLC dba FIRST CALL AUTO RECOVERY & TOWING, | § § § § § § § | **Oral Hearing Requested** |
| Defendants. | § § | |

**TITLEMAX OF TEXAS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant TitleMax of Texas, Inc. ("TitleMax") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment in its favor on each claim made by Plaintiff Taleisha Lewis ("Plaintiff" or "Lewis") in the First Amended Complaint (the "FAC") [ECF No. 35] as alleged against TitleMax. Summary judgment is proper because there are no genuine issues of material fact and TitleMax is entitled to judgment as a matter of law. This motion is supported by the following memorandum of points and authorities, the documents on file, and the accompanying exhibits.

**INTRODUCTION**

In the FAC, Plaintiff asserts two claims against TitleMax for alleged violations of the Texas Uniform Commercial Code ("UCC"), Tex. Bus. & Com. Code § 9.609(b)(2), and the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code § 392.301(a)(1), arising out of the towing and removal by defendant First Call Auto Recovery and Towing ("FCAR")

of a 2007 Ford Five Hundred owned by Plaintiff.

Because the evidence is undisputed that Plaintiff is not a "debtor" as defined by the statute, her first claim under Tex. Bus. & Com. Code § 9.609(b)(2) fails as a matter of law. Plaintiff's second claim under Tex. Fin. Code § 392.301(a)(1) likewise fails as a matter of law for numerous reasons, including because TitleMax cannot be held liable for the alleged actions of FCAR, and in any event, there is no evidence that TitleMax or FCAR violated Tex. Fin. Code § 392.301(a)(1).

## UNDISPUTED MATERIAL FACTS

On March 18, 2017, TitleMax, acting in its capacity as a Credit Services Organization, arranged for a customer (the "Borrower") to receive a loan from Ivy Funding Company, LLC ("Ivy Funding"), whereby Ivy Funding obtained a first position lien on the Borrower's vehicle – a 2007 Ford Five Hundred, VIN 1FAHP24167G154751 (the "Vehicle"). (*See* Ex. A, Urbaez Cotto Decl., ¶ 4, Ex. 2 thereto, TitleMax_000001-000002). After the Borrower defaulted on the loan in July 2017, TitleMax bought the loan from Ivy Funding, and TitleMax became the first position lienholder. (*See* Ex. B, Burnett Dep., pp. 10-12).

On or about September 22, 2017, a TitleMax employee made an internal request for repossession. (*See* Ex. C, Cotto Dep., pp. 31-32 & Ex. A thereto, TitleMax 000020). On the same day, TitleMax's repossession approval team approved the repossession request after reviewing the account and vehicle information, which included verifying that TitleMax maintained a lien on the Vehicle. (Ex. C, Cotto Dep., pp. 32-33 & Ex. A thereto, TitleMax 000020).

TitleMax then made an external request for recovery through its recovery management system, ultimately making the request available to Plate Locate (Ex. C, Cotto Dep., pp.17-18), a repossession forwarder, which acts as a middleman by strictly subcontracting out recovery assignments to third-party repossession vendors. (*See* Ex. D, Medina Dep., p. 12). TitleMax and Plate Locate have an independent contractor

relationship. (Ex. D, Medina Dep., pp. 35-36 & Ex. C thereto, PlateLocate_Lewis 0006; Plate Locate/TitleMax Agreement, p. 4). Plate Locate and FCAR also have an independent contractor relationship, whereby FCAR could opt to accept recovery orders placed through Plate Locate, without further direction. (Ex. E, Rance Dep., pp. 40:6-10, 42:11-16 & Ex. F thereto, PlateLocate_Lewis 0022).

On or about November 14, 2017, the Vehicle was sold to Patrick Brown ("Brown") by way of a "Licensed Vehicle Storage Facility Lien Foreclosure" public sale, which Plaintiff alleges resulted in the extinguishment of TitleMax's lien. (*See* Ex. F, Lewis 000025; FAC ¶¶ 49-50). Title to the Vehicle was issued to Brown on April 21, 2018. (*See* Ex. G, Lewis 000020). On or about July 15, 2018, Brown sold the Vehicle to Plaintiff. (*See* Ex. H, Lewis Dep., p. 16; Ex. I, Lewis 000019). Plaintiff acquired the Vehicle subject to no liens. (*See* Ex. J, Lewis 000002; Ex. K, Plaintiff's Responses to TitleMax's Requests for Admission, No. 3; *see also id.* at Nos. 6-9).

On July 25, 2019, FCAR located and repossessed the Vehicle. (Ex. H, Lewis Dep., p. 28; Ex. E, Rance Dep., p. 25-27 & Ex. B thereto; Ex. D, Medina Dep., pp. 19-20 & Ex. E thereto, PlateLocate_Lewis 00043). FCAR assumed Plate Locate had checked the Vehicle's title history before the repossession. (Ex. E, Rance Dep., pp. 17:10-18:19, 25:20-25). Neither Plaintiff nor any TitleMax representative witnessed or was present at the repossession on July 25, 2019. (Ex. H, Lewis Dep., p. 29 (testifying that Plaintiff did not realize the repossession occurred until she went to leave for work and the Vehicle was missing); Ex. E, Rance Dep., pp. 41-42). Later the same day, FCAR returned the Vehicle to Plaintiff. (*See* Ex. L, Plaintiff's Responses to TitleMax's Interrogatories, No. 7). No harm or damage was caused to the Vehicle from the repossession. (*See* Ex. K, Plaintiff's Responses to TitleMax's Requests for Admission, No. 13).

## LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine; that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323.

## DISCUSSION

**I.     Plaintiff's Claim Under Tex. Bus. & Com. Code § 9.609(b)(2) Fails Because The Evidence Establishes That Plaintiff Was Not A "Debtor"**

The Texas Business and Commerce Code is the state's adoption of the Uniform Commercial Code ("UCC"). Recovery for alleged violations of Tex. Bus. & Com. Code § 9.609 – the statute on which Plaintiff sues here – may be sought only by "debtors." *See* Tex. Bus. & Com. Code § 9.625(c) & (d). A "debtor" is defined as "a person having an interest, other than a security interest or other lien, ***in the collateral***, whether or not the person is an obligor[.]" Tex. Bus. & Com. Code § 9.102(28)(A) (emphasis added). "Collateral," in turn, is defined as "the property ***subject to a security interest*** or agricultural lien." Tex. Bus. & Com. Code § 9.102(12) (emphasis added).

Plaintiff's entire theory of this case is that she owned the Vehicle outright, and that the Vehicle thus was ***not*** "subject to a security interest" once Plaintiff acquired ownership of it. *See* FAC, ¶ 50; Ex. J, Lewis 000002; Ex. K, Plaintiff's Responses to TitleMax's

Requests for Admission, No. 3, 6-9. Because there is no dispute that the Vehicle was not "subject to a security interest," it did not constitute "collateral" under the Texas Business & Commercial Code. And because the Vehicle was not "collateral," Plaintiff was never a "debtor" under the Code.

Because Plaintiff was not a "debtor" as defined by statute, she cannot bring a claim under Tex. Bus. & Com. Code § 9.609. TitleMax therefore is entitled to summary judgment in its favor on Plaintiff's claim under this statute.

## II. Plaintiff's Claim Against TitleMax Under The TDCA Fails As A Matter Of Law For Multiple Reasons

Count Five of Plaintiff's FAC alleges, against "All Defendants" without distinction, a violation of Tex. Fin. Code § 392.301(a)(1), a provision of the TDCA. This provision states that:

> (a) In debt collection, a debt collector may not use *threats, coercion, or attempts to coerce* that employ any of the following practices:
>
> > (1) Using or threatening to use violence or *other criminal means* to cause harm to a person or property of a person. . . .

(Emphasis added). As the "criminal means" allegedly used, Plaintiff asserts an unspecified "Defendant" engaged in "theft" in connection with the repossession of Plaintiff's Vehicle. FAC, ¶ 81 ("Defendant's taking of Plaintiff's vehicle constitutes theft.").

As explained below, Plaintiff's TDCA claim fails as against Titlemax on multiple grounds.

### A. It is undisputed that TitleMax did not violate the TDCA through its own actions.

As an initial matter, there is no evidence that TitleMax *itself* "use[d] threats, coercion, or attempts to coerce" Plaintiff or anyone else to do anything.

Nor is there evidence that TitleMax physically took Plaintiff's vehicle, and thus no action by Titlemax could possibly be construed as "theft." Instead, the evidence is undisputed that FCAR was the entity that physically took the Vehicle from Plaintiff's

possession and no one from TitleMax was present. *See* Ex. E, Rance Dep., pp. 26-27, 41-42.

### B.     TitleMax is not vicariously liable for FCAR's conduct.

The record in this case also shows that TitleMax cannot, as a matter of law, be deemed vicariously liable for the alleged actions of FCAR. The Supreme Court of Texas has explained that "an employer may become liable for [an] independent contractor's tortious acts only if the employer controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006) (citing *Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)).

Here, the record is devoid of any evidence that TitleMax had the sort of control over FCAR that would be required for TitleMax to be liable for FCAR's alleged actions. As explained above, TitleMax submitted a request for recovery through Plate Locate, an entity with which TitleMax had only an independent contractor relationship. *See* Ex. D, Medina Dep., pp. 35-36 & Ex. C thereto, PlateLocate_Lewis 0006. FCAR, an independent repossession vendor, then decided to accept the request for recovery through Plate Locate. *See* Ex. E, Rance Dep., pp. 40:6-10, 42:11-16. Thus, FCAR was an independent contractor, *twice removed*, from TitleMax. There is no evidence that TitleMax exercised control over Plate Locate, much less over the methods and procedures that FCAR used in effecting the repossession. As such, TitleMax cannot be found vicariously liable under the general rule, announced in *Ramirez*, of non-liability of employers for the alleged acts of independent contractors.

Nor can TitleMax be found vicariously liable under a narrow exception carved out in *Mbank El Paso N.A. v. Sanchez*, 836 S.W.2d 151 (Tex. 1992). In *Sanchez*, the Supreme Court of Texas held that a secured creditor "remains liable for breaches of the peace committed by its independent contractor." *Mbank*, 836 S.W.2d at 154. This exception is inapplicable here, as FCAR did not breach the peace.

"The determination of whether an act amounts to a breach of the peace is dependent upon the surrounding acts and circumstances of the particular case." *Wilson v. State*, 2018 Tex. App. LEXIS 8478, at *10-11 (Tex. App.—Dallas [5th Dist.] Oct. 17, 2018) (citing *Woods v. State*, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948)). However, "[a]ctual or threatened violence is an essential element of a breach of the peace." *Wilson*, 2018 Tex. App. LEXIS 8478, at *10 (quoting Woods, 213 S.W.2d at 687); *see also Mbank*, 836 S.W.2d at 152 ( (citing *Godwin v. Stanley*, 331 S.W.2d 341, 342-43 (Tex. Civ.App.—Amarillo 1959, *writ ref'd n.r.e*) ("The rule imposing liability on secured parties for breaches of the peace is based on longstanding policy concerns regarding the exercise of force or violence.").

There is no evidence that FCAR used "actual or threatened violence" in the course of repossessing the Vehicle. Indeed, the evidence demonstrates that Plaintiff ***was not even present*** when the Vehicle was taken, *see* Ex. H, Lewis Dep., p. 29, much less that FCAR used actual or threatened violence against her. Because FCAR did not breach the peace in repossessing the Vehicle, TitleMax is not liable for FCAR's actions.

**C.     Additionally, undisputed evidence shows FCAR did not violate the TDCA.**

Even focusing exclusively on ***the alleged conduct of FCAR*** for which Plaintiff apparently seeks to hold TitleMax liable, there is no evidence that FCAR committed any violation of Tex. Fin. Code § 392.301(a)(1).

First, there is no evidence that FCAR "use[d] threats, coercion, or attempts to coerce" in the course of taking the Vehicle. Once again, there is no evidence that Plaintiff was present when FCAR took the Vehicle, *see* Lewis Dep., p. 29, and there is no evidence that FCAR communicated in any way with Plaintiff prior to taking the Vehicle such that FCAR could have made "threats" or engaged in "coercion" or "attempts to coerce."

Moreover, FCAR's taking of the Vehicle did not constitute "theft." The Texas Penal Code states that "[a] person commits an offense [of theft] if he unlawfully appropriates

property ***with intent to deprive*** the owner of property." Tex. Penal Code § 31.03(a) (emphasis added). The penal code defines "to deprive" as:

    (A)    to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

    (B)    to restore property only upon payment of reward or other compensation; or

    (C)    to dispose of property in a manner that makes recovery of the property by the owner unlikely.

Tex. Penal Code § 31.01(2).

There is no evidence that FCAR had the intent to engage in any of the conduct defined in Section 31.01(2). The undisputed fact that ***FCAR returned the Vehicle within a few hours of taking it and with no damage*** vitiates any theory that FCAR intended to "withhold" the Vehicle "permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." § 31.01(2)(A). These same undisputed facts also defeat any claim that FCAR intended to return the Vehicle "only upon payment of reward or other compensation," or to "dispose" of the Vehicle "in a manner that makes recovery of the property by the owner unlikely." § 31.01(2)(B)&(C). Contrary to any claim that FCAR had the intent to engage in any of these wrongful actions, the undisputed evidence shows that FCAR believed a title search had been conducted on the Vehicle before it took the recovery assignment. *See* Ex. E, Rance Dep., p. 25. Given the lack of evidence to suggest FCAR committed theft, Plaintiff cannot, as a matter of law, demonstrate a genuine issue of material fact regarding any purported violation of the TDCA.

[continued on next page]

## CONCLUSION

For the reasons stated herein, TitleMax respectfully requests that the Court deny Plaintiff's claims as alleged against it and enter judgment in TitleMax's favor.

January 8, 2021

Respectfully submitted,

/s/ Lindsay Demaree
Lindsay Demaree
Joel Tasca (pro hac vice)
BALLARD SPAHR LLP
1980 Festival Plaza Dr., Suite 900
Las Vegas, NV 89135-2658
(702) 471-7000
(702) 471-7070 (fax)
DemareeL@ballardspahr.com
Tasca@ballardspahr.com

ATTORNEYS FOR DEFENDANT
TITLEMAX OF TEXAS, INC.

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies the foregoing document was served to all counsel and parties of record via the CM/ECF system on January 8, 2021.

                                          /s/ Lindsay Demaree
                                          Lindsay Demaree