# EXHIBIT E

EXHIBIT E

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                       WACO DIVISION

 3   TALES LEWIS,                  )
                                   )
 4           Plaintiff,            )
                                   )
 5   VS.                           ) CIVIL ACTION NO.
                                   ) 6:19-CV-00630-ADA-JCM
 6   TITLEMAX OF TEXAS, INC.,      )
     IVY FUNDING, LLC, PLATE       )
 7   RECON, LLC DBA PLATE          )
     LOCATE, AND FCAR, LLC, DBA    )
 8   FIRST CALL AUTO RECOVERY &    )
     TOWING,                       )
 9                                 )
             Defendants.           )
10
     *************************************************************
11                      ORAL DEPOSITION OF

12                     CHRISTOPHER M. RANCE

13                        October 6, 2020

14                           Volume 1

15                      (Reported Remotely)

16           CONTAINS CONFIDENTIAL DOCUMENT(S)

17   *************************************************************

18      ORAL DEPOSITION OF CHRISTOPHER M. RANCE, produced as

19   a deponent at the instance of the PLAINTIFF, TALEISHA

20   LEWIS, and duly sworn, was taken in the above-styled and

21   -numbered cause on the 6th day of October, 2020,

22   from 12:03 p.m. to 1:12 p.m., before Tonie Thompson,

23   Certified Shorthand Reporter in and for the State of

24   Texas, Registered Professional Reporter, Certified

25   Realtime Reporter, reported by machine shorthand, at
```



```
 1       A.    If I -- I would go pick the vehicle up or I
 2   would go to the address where the vehicle -- if I already
 3   have the vehicle or the repossession order?  Can you
 4   repeat the question?  I don't understand.
 5       Q.    Okay.  So supposing somebody has given you an
 6   order to repossess a vehicle, and they've given you an
 7   address to go to repossess the vehicle.  What's the next
 8   step?
 9       A.    I would repossess the vehicle.
10       Q.    I see.  Okay.  And before repossessing the
11   vehicle, is there anything that you review other than the
12   repossession order?
13       A.    Yeah.  We would do a -- run the license plate,
14   run it through the --
15             (Clarification made by the reporter.)
16       A.    If a client sent over an order, we would do a
17   lien check, enter into our system, wait on a historical
18   scan to come across so we would have a good address for
19   it.  And then we would go and pick the vehicle up.
20       Q.    (BY MR. GILL) Okay.  Does your preparation
21   before picking up a vehicle ever involve researching the
22   title history of the vehicle?
23       A.    Yes.
24       Q.    Okay.  How often is it that you're researching
25   the title history of the vehicle before repossessing it?
```



```
 1       A.   If it's a direct -- if it's a direct assignment
 2   to us from a bank or one of our clients, 100 percent of
 3   the time.
 4       Q.   Okay.  So if an intermediary company like
 5   Plate Locate assigns you a repossession, you would
 6   100 percent of the time do a title history on that
 7   vehicle?
 8       A.   No.  If some of the intermediary companies --
 9   or, actually, now we do.  But before, since they were a
10   repossession company theirself, we would expect them to
11   do it and also -- well, we would expect them to do it.
12       Q.   Okay.  So say you wouldn't pull it yourself; you
13   would expect them to do it?
14       A.   Yes.
15       Q.   Okay.
16       A.   Well, I guess, once there was an assignment --
17   if there was DRN assignment from Plate Locate, we
18   wouldn't do it.  We would assume they had already done
19   it.  If it was an assignment that they sent us to our
20   office and they wanted us to locate the vehicle, we would
21   do the lien check.  So I guess it depends on the --
22       Q.   Okay.  When you say "DRN" --
23       A.   I'm sorry.  You cut out.
24       Q.   I'm sorry.  I spoke over you.  Say that again.
25       A.   I'm sorry.  You cut out.  I didn't hear your
```



```
 1      Q.   I'm sorry.  I didn't catch that.
 2      A.   No.
 3      Q.   I see.  Okay.
 4           MR. GILL:  Can we jump off the record again
 5 real quick?
 6           THE REPORTER:  Yes.  We're off the record
 7 at 12:37 p.m.
 8           (Break taken at 12:37 p.m.)
 9           (Back on the record at 12:38 p.m.)
10           THE REPORTER:  We're back on the record
11 at 12:38 p.m.
12      Q.   (BY MR. GILL) All righty.  Thank you for that.
13 Sorry about that delay there.
14           All right.  So picking up back where we
15 left off here, the repossession in this instance was
16 based on one of your vehicles scanning a plate and seeing
17 a vehicle that Plate Locate wanted repossessed.  Is that
18 correct?
19      A.   Yes.
20      Q.   All righty.  And again, to recapitulate, this is
21 one of those instances in which First Call would not do a
22 title history report before repossessing the vehicle
23 because it relied on the person assigning it to do
24 it.  Is that correct?
25      A.   Yes.
```



```
 1      Q.   All righty.  So turning back to the event, your
 2   driver picks up the vehicle at 5 o'clock in the
 3   morning.  Is that correct?
 4      A.   Yes.
 5      Q.   All right.  We have some exhibits here that we
 6   can refer to and maybe we can walk through together to
 7   make sure that we understand what's happening here.  So
 8   I'm going to look at Exhibit B --
 9              (Deposition Exhibit B referenced.)
10      Q.   (BY MR. GILL) -- which is --
11              MR. RUSSELL:  Jose, did you say "B" or "D"?
12              MR. GILL:  Let me know when he's got it in
13   front of him.
14              THE DEPONENT:  Which one?
15              MR. GILL:  Yeah, B like "boy."
16              MR. RUSSELL:  Okay.
17      Q.   (BY MR. GILL) It's our Exhibit B, First Call
18   Auto Recovery & Towing Car Condition Report.
19      A.   Okay.
20      Q.   All right.  Go ahead and get myself configured
21   here.
22              Okay.  So let's walk you through this
23   document.  Is this prepared after the vehicle is
24   repossessed?  Is that right?
25      A.   (No audible response.)
```



1    Q.   I didn't catch that.  Did either of you catch
2  that?
3    A.   Yes.
4    Q.   Okay.  And so you repossessed the vehicle, and
5  then this document is prepared to, I guess, memorialize
6  the condition of the vehicle.  Is that right?
7    A.   (No audible response.)
8    Q.   Is that a "yes"?
9    A.   Yes.
10   Q.   All righty.  Okay.  And so this document lists
11 as "Client:  Plate Locate - Repos Sys."  Is that
12 Plate Locate, the other defendant in this case?
13   A.   Yes.
14   Q.   Okay.  And I see on there it says legal owner is
15 TitleMax.  What is the significance of that?  Is TitleMax
16 the person that hired Plate Locate to get this car?
17   A.   Yes.
18   Q.   Okay.  And so the recovery date on this thing is
19 July 25th, 2019, at 5:00 a.m., right?
20   A.   Yes.
21   Q.   All righty.  And just moving through it here,
22 you have collateral, where it's stored at, the year,
23 make, model, et cetera.  This is all prepared after you
24 repossessed the vehicle, correct?
25   A.   Yes.



```
 1        A.   No.
 2                  (Deposition Exhibit F referenced.)
 3                  MS. DEMAREE:  Okay.  If you could, take a
 4   look at what's been marked as Exhibit F, as in Frank.
 5        Q.   (BY MS. DEMAREE) Do you recognize this document?
 6        A.   Yes.
 7        Q.   And what is it?
 8        A.   It's our agreement with them, with Plate Locate.
 9        Q.   Okay.  And if you take a look at it, you see the
10   Section 1, Services, there?  And it mentions that
11   "Repossession agent has the right to perform services for
12   third parties other than Plate Locate."
13                  You, as you testified, you did, in fact,
14   conduct repossessions for other companies besides
15   Plate Locate, right?
16        A.   Yes.
17        Q.   And, in fact, a majority of your repossessions
18   were for companies other than Plate Locate, right?
19        A.   (No audible response.)
20                  (Clarification made by the reporter.)
21        A.   Yes.
22        Q.   (BY MS. DEMAREE) Thank you.
23                  I'd like to direct your attention to --
24   marked Plate Locate Lewis 21, that page.  And do you see
25   where it says, Subsection G, "No Subcontracting/
```



```
 1  Employees," this provision requires you to conduct any
 2  repossessions using your own employees, right?
 3       A.   Yes.
 4       Q.   And you did so in this case, correct?
 5       A.   Yes.
 6       Q.   All right.  If you turn to the next page,
 7  Section 6, Independent Contractors, is it your
 8  understanding that you were an independent contractor of
 9  Plate Locate?
10       A.   Yes.
11       Q.   If we take a look at Section 9, Indemnity
12  Obligation, in looking at this provision, it says,
13  "Repossession agent agrees at all times to indemnify,
14  defend and hold harmlessly Plate Locate" --
15            (Clarification made by the reporter.)
16       Q.   (BY MS. DEMAREE) So going back, you see the
17  Section 9, Subsection A, it says, "Repossession agent
18  agrees at all times to indemnify, defend and hold
19  harmless Plate Locate," and it goes on to list other
20  Plate Locate parties?  Do you see that?
21       A.   Yes.
22       Q.   Is it your understanding that First Call had to
23  indemnify and defend Plate Locate if First Call made a
24  mistake in a recovery?
25       A.   Yes.
```



1   Q.   In looking at the Section 9, Indemnity
2   Obligation, is there any provision that requires
3   Plate Locate to indemnify First Call?
4   A.   No.
5   Q.   I'm sorry?
6   A.   No.
7   Q.   So you mentioned that you have a relationship
8   with TitleMax as well?
9   A.   Yes.
10  Q.   What's that relationship?
11  A.   Just -- we just pick up vehicles for them.
12  Q.   Okay.  In this particular case, though, you
13  received the order from Plate Locate, correct?
14  A.   Yes.
15  Q.   So it was not from TitleMax, correct?
16  A.   Yes.
17  Q.   Do you have any sort of relationship with
18  Ivy Funding Company, LLC?
19  A.   No.  I wasn't sure how Ivy Funding was even
20  involved with this.  I don't have any relationship with
21  them.
22  Q.   Was there a representative of Plate Locate at
23  the repossession?
24  A.   No.
25  Q.   Was there a representative of TitleMax at the



```
 1  repossession?
 2      A.  No.
 3      Q.  And was there a representative of Ivy Funding
 4  Company at the repossession?
 5      A.  No.
 6      Q.  And just so we're clear, we're talking about the
 7  repossession of the subject vehicle.
 8      A.  Yes.
 9      Q.  Are your answers still the same?
10      A.  Yes.
11      Q.  Okay.  Did Plate Locate direct you in how to go
12  about recovering the subject vehicle at all?
13      A.  No.
14      Q.  You determined what orders to accept, whether to
15  repossess the vehicle in this case, for example?
16      A.  Yes.
17      Q.  Did you -- so in this case, you're asserting a
18  common law indemnity claim against Plate Locate.  Are you
19  aware of that?
20      A.  I didn't understand.  Can you repeat that
21  question?
22      Q.  Okay.  So in this lawsuit, First Call has
23  asserted a claim against Plate Locate for indemnity.  Are
24  you aware of that claim?
25      A.  (No audible response.)
```



```
 1  Esquire Deposition Solutions on _____, 2020, was
 2  properly executed by the deponent to the deposition
 3  officer, and the attached change/correction sheet
 4  contains any changes, and the reasons therefor, made by
 5  the deponent.
 6      That the deposition transcript ___ was not returned
 7  to the deposition officer by the deponent.
 8      That the original deposition transcript, or a copy
 9  thereof, together with copies of all exhibits, was
10  delivered on the _____ day of _____, 2020, to
11  _____ for the safekeeping and use at trial.
12      That the amount of time used by each party at the
13  deposition is as follows:
14      MR. GILL..........00 HOURS:42 MINUTES
        MS. DEMAREE.......00 HOURS:18 MINUTES
15      MR. RUSSELL.......00 HOURS:00 MINUTES
16      That pursuant to information given to the deposition
17  officer at the time said testimony was taken, the
18  following includes counsel for all parties of record:
19      Mr. Jose Gill, Attorney for Plaintiff,
            Taleisha Lewis;
20      Ms. Lindsay C. Demaree, Attorney for Defendants
            TitleMax of Texas, Inc.; Ivy Funding, LLC;
21          Plate Recon, LLC, dba Plate Locate;
        Mr. Michael Russell, Attorney for Defendants
22          FCAR, LLC, dba First Call Auto Recovery & Towing,
            and the Deponent, Christopher M. Rance.
23                           * * *
24      That a copy of this certification was served on all
25  parties shown herein.
```



```
 1   Certified to by me this 19th day of October, 2020.
 2
 3                    _____
                      Tonie Thompson
 4                    Texas CSR No. 8348
                      NCRA No. 27999
 5                    Expiration Date:  01/31/2021
                      Esquire Deposition Solutions
 6                    Firm Registration No. 286
                      1700 Pacific Avenue, Suite 1000
 7                    Dallas, Texas 75201
                      Phone:   (214)257-1436
 8                    Fax:  (214)954-0506
                      www.esquiresolutions.com
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```





EXHIBIT "B"

EXHIBIT "B"

# First Call Auto Recovery & Towing Car Condition Report
## 702 S 53rd St   Temple, TX  76504
### Phone: (254) 778-7376   Fax: (254) 778-7378   State License No: TX

**Client:** Plate Locate - Repo Sys  
**Recovery Date:** 2019-07-25  
**Recovery Time:** 05:00 AM  
**Police Agency:** Temple PD  
**Order Type:** Repossess  
**Order To:** Involuntary Repossession  

**Case #:** 2073578447 / 63765  
**Account #:** 1086 **ATTN:** unassigned unassigned  
**Borrower:** Shaune Duncan  
**Legal Owner:** TitleMax  

**Recovery Location:** 809 Lexington Dr Temple TX 76504

**Personals:** Yes

bluetooth, lanyard, toys, ash tray, car seat, dishes, air freshner, clothes, stroller, shoes, hub cap, weed killer, misc papers, misc items

---

**Collateral** (Stored At: Main Storage Lot 702 S 53rd St 702 S 53rd St Temple TX 76504 254-778-7376)

| | | | |
|---|---|---|---|
| **Year:** 2007 | **Make:** Ford | **Model:** Five Hundred | **Color:** Silver |
| **VIN #:** 1FAHP24167G154751 | **Mileage:** 00 | **License/St:** KPX5285 / TX | **Expires:** |

| General | General Condition | Mechanical Condition | Interior Condition |
|---|---|---|---|
| | Average | Unknown | Dirty |

**Notes:**

| Keys | Ignition Keys  No | Secondary Keys  No | Battery  Good |
|---|---|---|---|

**Options**

| Type Of Vehicle | Roof | Transmission | Stereo |
|---|---|---|---|
| 4dr Car | Standard Roof | Automatic | Am/fm/cd |
| ☑ Power Windows | ☑ Power Locks | ☑ Tilt Wheel | ☑ A/C |
| ☑ Power Seats | ☑ Power Steering | ☑ Cruise Control | Diesel |
| ☑ Leather Seats | ☑ Alloy Wheels | | Rear A/C |

**Details:**

| Condition | Body | Paint | Able To Drive |
|---|---|---|---|
| | Dented | Scratched | No Keys |

**Driver's Side**

| Front Quarter Panel | Front Door | Rear Door | Rear Quarter Panel |
|---|---|---|---|
| Scratched And Dinged | Scratched And Dinged | Scratched And Dinged | Scratched And Dinged |

**Passenger's Side**

| Front Quarter Panel | Front Door | Rear Door | Rear Quarter Panel |
|---|---|---|---|
| Scratched And Dinged | Scratched And Dinged | Scratched And Dinged | Scratched And Dinged |

| Top | Hood | Roof | Trunk | Hatchback |
|---|---|---|---|---|
| | Scratch | Scratch | Scratched And Dinged | N/a |

| Bumper | Front | | Rear | |
|---|---|---|---|---|
| | Scratched And Dinged | | Scratched And Dinged | |

| Glass | Front Cracked |
|---|---|

| Tires Lft Frt | Left Rear | Right Front | Right Rear | Spare | Wheel Covers |
|---|---|---|---|---|---|
| Average | Average | Average | Average | Average | _____ |

**Completed By:** Amber  
**Date:** 07/25/2019

Received By: _____  
Received On: _____

10/06/2023
C. RANCE
**EXHIBIT F**
TONIE THOMPSON, CSR, RPR, CRR

CONFIDENTIAL                    PlateLocate_LEWIS0013

# PLATE LOCATE

## REPOSSESSION AGENT SERVICES AGREEMENT

THIS REPOSSESSION AGENT SERVICES AGREEMENT (this "Agreement") is effective as of the 28th day of June 2019 (the "Effective Date"), by and between Plate Recon, LLC d/b/a Plate Locate, a Texas limited liability company having an address at 23820 Lenze Road, Spring, TX 77389 ("Plate Locate"), and FCAR LLC, a Texas limited liability company having an address at 1719 W. Ave M, Ste C, Temple, TX, 76504 ("Repossession Agent"). Plate Locate and Repossession Agent are sometimes each referred to herein individually as, a "Party," and collectively as, the "Parties."





Section 6. **Independent Contractors**. The Parties are independent contractors and nothing contained in this Agreement shall be construed to place the Parties in the relationship of employer and employee, partners, principal and agent, or joint venturers. Neither Party shall have the power to bind or obligate the other Party, nor shall either Party hold itself out as having such authority. Repossession Agent has the sole right to control and direct the means, manner and method by which the services required by this Agreement will be performed so long as it complies with the requirements set forth in this Agreement. Repossession Agent shall be responsible for all expenses incurred while performing services under this Agreement, including, but not limited to, license fees, memberships and dues, automobile and other travel expenses, insurance premiums, and all salary, expenses and other compensation paid to employees or contract personnel that Repossession Agent hires to perform services pursuant to this Agreement.

THE PARTIES SIGN THIS AGREEMENT AS OF THE EFFECTIVE DATE. BY SIGNING BELOW EACH PARTY REPRESENTS THAT THEY HAD THE OPPORTUNITY TO CONSULT LEGAL COUNSEL OF THEIR CHOOSING PRIOR TO SIGNING THIS AGREEMENT (TO THE EXTENT THEY SO DESIRE) AND THAT THEY VOLUNTARILY SIGN THIS AGREEMENT WITH FULL UNDERSTANDING OF THE TERMS CONTAINED HEREIN.

PLATE LOCATE: PLATE RECON, LLC

Signature: *Jeremy Gonske* (DocuSigned by: AA0D93E56D574C6...)
Name: Jeremy Gonske
Title: CEO
Date: 6/28/2019

REPOSSESSION AGENT: FCAR LLC

Signature: *Christopher Rance* (DocuSigned by: 549C35BBA23446E...)
Name: Christopher Rance
Title: Owner
Date: 6/28/2019